JOSÉ ROMAGUERA E HIJOS, Petitioner, *v.* COURT OF TAX APPEALS OF PUERTO RICO, Respondent.

No. 1365.   Argued November 9, 1942.—Decided November 30, 1942.

J. J. Ortiz Alibrán for petitioner. M. Rodríguez Ramos, Acting Attorney General, and José Rafael Gelpí, Assistant Attorney General, for the Treasurer of Puerto Rico, intervener.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Petitioner, a partnership engaged in the purchase and sale of molasses, is the owner of two tanks and a house located in Puerta de Tierra, San Juan, on a lot owned by the People of Puerto Rico.

On February 13, 1941, the Treasurer of Puerto Rico notified to the petitioner an appraisal for the purpose of a tax assessment upon said tanks and house for the fiscal years comprised between 1934–35 and 1941–42. Being unable to agree with the appraisal, the petitioner appealed to the Board of Review and Equalization, which board upheld the appraisal made by the Treasurer. On reconsideration, the board agreed to grant appellant a new hearing. This hearing took place before the Court of Tax Appeals, where testimony and documentary evidence were submitted. On June 8, 1942, the court entered a resolution sustaining the validity of the appraisal.

In the instant writ of certiorari the petitioner-appellant alleges that the lower court erred in deciding that the tanks involved herein are real property; and in not taking into consideration the fact that the land on which the tanks are located belongs to the People of Puerto Rico and that the petitioner is obliged to take them away upon termination of the lease.

At the hearing before the Court of Tax Appeals, petitioner in order to buttress its contention that the tanks are

personal property and that the Treasurer is without authority to levy taxes upon them for years prior to the year in which the appraisal is made, offered the testimony of Mr. J. R. Vendrell, a partner of the concern who said: that the tanks are located on land belonging to the Government which was leased by petitioner for a period of fifteen years on condition that upon expiration of said period the lessee would remove the tanks and leave the land in the same condition as it was before the said tanks were placed there; that the smallest tank, with a capacity of 100,000 gallons, has been located on three different places, namely, in Utuado, Ponce, and Ponce Playa; that the largest, which has a capacity of 1,100,000 gallons, has been located only where it now stands; that both tanks rest upon the land and a concrete wall has been erected around them to forego the need of making an excavation; that those tanks are connected with a pipe line through which the molasses are pumped to the ship; that said pipe line is not permanent because the Government does not give permanent permits; that the tanks may be taken apart and rebuilt in another place; that after the rivets are removed the parts remain intact; that according to usage and custom, when a tank is no longer used in some place, it is removed to another; that the tanks are not wedged in the land, rather, they rest upon it; that the tanks have an estimated life of about 20 years, which may be stretched to 25 or 30 years; that the tanks were not located there with the purpose of leaving them permanently and that its intention was to leave them there while the contract for the purchase and sale of molasses was in force; that the tanks involved herein were erected about seven years ago; that petitioner proposes to take away the tanks when the lease should end.

At the hearing, the Treasurer of Puerto Rico did not offer any evidence to contradict Mr. Vendrell's testimony. In the brief submitted by him the facts such as we have set

them forth are admitted as true. The only legal question which we must decide is whether, according to the facts, the tanks in question are real property and whether, as such, they are subject to the payment of taxes levied by the Treasurer, or whether, on the contrary, they are personal property as petitioner-appellant contends.

In accordance with §263 of the Civil Code (1930 ed.) the following, among others, are immovables (real property), (a) lands, buildings, roads, and *structures* of every kind adherent to the soil; (b) everything attached to an immovable in a fixed manner, in such a way that it cannot be separated from it *without breaking* the matter, or causing *injury* to the object; (c) all objects of use placed in buildings or on lands or tenements *by the owner thereof* in such a manner that *they become attached permanently to the property;* (d) machinery instruments or implements intended by *the owner of the tenement* for the industry or works that may be carried upon it and which tend directly to meet the needs of the said industry or works.

In accordance with §265 of the same Code, movables are considered such things as are susceptible of appropriation and not included in §263, "and, in general, all those which can be carried from place to place without impairing the immovable to which they may be attached." Section 290 of the Political Code provides that: "machinery, vessels, instruments or implements *not fixed to the* building or *soil* shall not be deemed to be real property," rather, personal property.

If we apply the foregoing legal provisions to the facts of the instant case, the conclusion is inescapable that the tanks in question are personal property. The evidence shows that the tanks have been put together and rest upon the soil of the lot, but they are not attached to the same. The concrete circle or wall upon which they rest has been placed there for the purpose of avoiding the tilting of the tank

when it is filled with molasses and the undermining of its base by rainfall, and not with the end in view of permanently attaching the tank to the soil. The tanks may be taken apart and put together again in another place without damaging or deteriorating in any way whatsoever the steel plates of which they are made, it being enough to take off the rivets which unite them and putting them back when they are put together in their new site. Such was the procedure followed on four occasions with respect to the smallest of the tanks and the evidence showed that the same could be done with the largest.

In order for a machine or instrument, used by an industry established on a certain lot, to be considered as real property, it is an indispensable requisite that the owner of the lot be the person who installed the machine or instrument thereon. That is not the case here, for we already know that the lot belongs to the Government and that the tanks belong to the petitioner.

The case of *Pérez* v. *Matos*, 48 P.R.R. 582, presents a situation similar to the one before us now. It was held that an electric mixer placed on a platform raised from the floor and easily separable must be considered as personal property until it is otherwise clearly demonstrated; and that the intention of the owner is an important element in determining whether or not the mixer, installed by the owner of a lot and used in connection with an industry thereon established by said owner, has lost its nature of personal property.

Where, as in the instant case, the land belongs to a person different from that of the owner of the machine, instrument, or implement installed upon the real property, the intention of the parties is and should be the most important factor, though not the decisive factor in deciding whether or not the machine, instrument, or implement has lost its nature of personal property and has been converted into real property.

In 22 Am. Jur. 718, the following appears:

"6. *Intention Generally.*—Of the three tests previously mentioned, the clear tendency of modern authority seems to be to give pre-eminence to the intention to make the article a permanent accession to the freehold, and the other tests seem to derive their chief value as evidence of such intention. This test—the intention of the party making the annexation—is made the controlling criterion by most of the authorities, and generally it is considered to be the chief test. It is not always determinative, but in cases of doubt it has a controlling influence and must be considered. However, in order that a chattel may be converted into a fixture, the intention to make it a permanent accession to the realty must affirmatively and plainly appear; if the matter is left in doubt and uncertainty, the legal qualities of the article are not changed, and it must be deemed a chattel. Correlatively, removable chattels annexed to the freehold may remain personalty where the intent that they shall do is evident from the conduct or actions of the parties."

In the work "Cooley on Taxation," vol. 2, par. 559, pp. 1219, 1220, it is said:

"Machinery and the like, where not so attached as to become fixtures, are taxable as personalty, but if a fixture they are taxable as a part of the realty unless otherwise provided by statute. Machinery brought on to the property of another to carry out a contract to perform certain work, and to be removed on the completion of the contract, is taxable as personal rather than real property."

See also Schouler "Personal Property," 5th ed., par. 121, p. 170.

Taking into consideration that the tanks in question are not permanently attached to the soil, but merely resting thereon; that said tanks belong to the lessee and not to the lessor, and that they have been installed thereon by the lessee in order to be able to carry on his molasses export business; that the contracting parties stipulated that, upon termination of the lease, the lessee would be able to and should take away the tanks, leaving the land as it had found it; and that said tanks may be taken apart and removed from

the lot without causing any harm to the real property or to the tanks themselves, we hold that the tanks in question are and should be considered as personal property and should be appraised as such. The tanks being, as they are personal property, the appraisal made by the Treasurer by virtue of the provisions of §303 of the Political Code can not be upheld as being legal. The above-mentioned section authorizes the Treasurer to levy and collect taxes upon any *real property* that may have been omitted in the appraisal made by any taxpayer during any economic year or years from the year 1901–02 on. The power granted by the statute does not involve personal property.

For the foregoing reasons the decision of the Court of Tax Appeals of June 5, 1942, must be set aside.

Mr. Justice Snyder did not participate herein.